**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven T. Waltner; and Sarah Van Hoey, | No. CV-19-04679-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| United States, | |
| Defendant. | |

Pro se Plaintiffs Steven Waltner and Sara Van Hoey, who formerly were married, sue the United States seeking tax refunds from their 2013-2017 tax years.  Doc. 1.  The government moves to dismiss for lack of subject matter jurisdiction and, in the alternative, for summary judgment.  Doc. 19.  The motions are fully briefed, and no party requests oral argument.  Docs. 40, 41, 47, 48, 54.  For reasons stated below, the Court will grant the motion to dismiss in part and grant the motion for summary judgment.

**I.    Background.**

Plaintiffs allege that they are entitled to a number of tax refunds erroneously retained by the government.  Doc. 1.  The Court previously dismissed a related case brought by Plaintiffs, finding that they filed it prematurely in violation of 26 U.S.C. § 6532.  Doc. 41 (No. CV-18-01163); *see Waltner v. United States*, No. CV18-1163-PHX-DGC, 2019 WL 176800 (D. Ariz. Jan. 11, 2019).  After pursuing administrative remedies, Plaintiffs filed this case on July 10, 2019, asserting substantially similar claims.  Doc. 1.

Counts 1-6 of Plaintiffs' complaint allege that Plaintiffs were entitled to income tax refunds for tax years 2013-2017, that those refunds were wrongly applied to frivolous return penalties, Tax Court sanctions, and unpaid tax liabilities assessed against Plaintiffs for earlier tax years, and that Plaintiffs are entitled to recover the 2013-2017 refunds in this action. *Id.* Counts 7-9 seek (1) damages under 26 U.S.C. § 7433 (*id.* ¶¶ 105-10), (2) a permanent injunction barring the Department of Justice ("DOJ") and Internal Revenue Service ("IRS") from collecting or assessing additional civil penalties or otherwise contacting Plaintiffs (*id.* ¶¶ 111-25), and (3) mandamus relief directing the government to remove all penalties under 26 U.S.C. § 6702 from Plaintiffs' tax accounts (*id.* ¶¶ 126-35).[1]

Plaintiffs have a long history of litigating with the IRS about their civil tax liability, including a number of cases related in whole or in part to the tax penalties at issue in this case. Their prior cases include at least the following: *Waltner v. United States*, 98 Fed. Cl. 737 (2011), *aff'd*, 679 F.3d 1329 (Fed. Cir. 2012); *Waltner v. Comm'r*, 107 T.C.M. (CCH) 1189 (T.C. 2014), *aff'd*, 659 F. App'x 440 (9th Cir. 2016); *Waltner v. Comm'r*, 108 T.C.M. (CCH) 6 (T.C. 2014), *aff'd in part and dismissed in part*, 748 F. App'x 162 (9th Cir. 2019); *Waltner v. Comm'r*, 110 T.C.M. (CCH) 133 (T.C. 2015), *aff'd*, 714 F. App'x 726 (9th Cir. 2018); *Waltner v. Comm'r*, No. 8726-11L (U.S. Tax Court 2015), *appeal dismissed*, 769 F. App'x 448 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 1106 (2020), *reh'g denied*, No. 19-488, 2020 WL 1906742 (U.S. Apr. 20, 2020); *Waltner v. United States*, No. CV18-1163-PHX-DGC, 2019 WL 176800, at *1 (D. Ariz. Jan. 11, 2019).

Pro se Plaintiffs represent themselves in this case, and their briefs are thorough and well-written. Plaintiffs raise a variety of arguments on almost every issue – arguments that require close examination of tax laws, regulations, and the voluminous record in this and related cases. Plaintiffs have been similarly exhaustive in their administrative disputes with the IRS. The record reflects scores of letters, administrative petitions, demands, FOIA

---

[1] Throughout this order, the Court will cite to documents filed in the Court's docket either by paragraph number or by page numbers attached to the top of pages by the Court's electronic filing system.

requests, and other efforts – over the course of many years – to contest Plaintiffs' tax liabilities. Most of these disputes appear to arise from Plaintiffs' claims that they had no income in years when their employers and others reported income on their behalf. Plaintiffs' efforts to contest their tax liability have not been well received by the IRS or the courts. They have been largely unsuccessful in their court cases, have been assessed many frivolous filing penalties by the IRS, and have been sanctioned by the Tax Court for making frivolous arguments. Plaintiffs nonetheless continue to argue vigorously that the actions of the IRS and various courts are improper, uninformed, and even vindictive.

As explained below, the Court finds that it lacks jurisdiction over some claims Plaintiffs have asserted, and that all of their claims are barred by collateral estoppel or other legal defects. This order is lengthy because of the many arguments that must be addressed in reaching these conclusions.

**II.    Motion to Dismiss.**

A motion to dismiss under Rule 12(b)(1) can present either a facial or factual attack on jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A facial attack asserts that the allegations in the complaint are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To determine whether jurisdiction exists, the complaint's allegations are taken as true and construed in favor of the non-moving party. *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 930 (N.D. Cal. 2009) (citing *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996)). A factual attack, by contrast, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The plaintiff's allegations are not entitled to a presumption of truthfulness, the Court may look beyond the pleadings to resolve factual disputes, and the plaintiff has the burden of proving jurisdiction. *Id.*

In its motion to dismiss, Defendant asserts factual challenges to the Court's jurisdiction over Counts 1 and 3-6. Doc. 19-1 at 2. Defendant looks past the allegations of the complaint and asserts that Plaintiffs either did not file proper administrative refund

claims or pay off their disputed tax liabilities as required for jurisdiction.  Because these are factual challenges, the Court will not presume the allegations of the complaint to be true, and Plaintiffs bear the burden of proving subject matter jurisdiction.

### A.    Timeliness Arguments.

To assert a claim against the United States, Plaintiffs must prove that sovereign immunity has been waived.  *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1087-88 (9th Cir. 2007).  "Absent its consent to suit, an action against the United States must be dismissed."  *Elias v. Connett*, 908 F.2d 521, 527 (9th Cir. 1990).

Under 28 U.S.C. § 1346(a)(1), federal courts have jurisdiction over civil actions against the United States to recover taxes only when certain administrative requirements are satisfied.  28 U.S.C. § 1346; *United States v. Dalm*, 494 U.S. 596, 601 (1990).  Before filing an action in federal court, a plaintiff must file an administrative claim for a refund with the Secretary of the Treasury.  26 U.S.C. § 7422(a); *Dalm*, 494 U.S. at 601-02; *see also Tosello v. United States*, 210 F.3d 1125, 1127 (9th Cir. 2000).  The claim must be filed within "three years of the time the [plaintiff's tax] return was filed or two years of the time the tax was paid, whichever is later."  *Yuen v. United States*, 825 F.2d 244, 245 (9th Cir. 1987) (citing 26 U.S.C. § 6511(a)).  In addition, there is a "look-back" provision in 26 U.S.C. § 6511 which applies even when a claim is timely filed.  It provides that a plaintiff cannot recover more than the tax she paid "within the period[] immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return."  26 U.S.C. § 6511(b)(2)(A).  "Plaintiff must satisfy both the filing deadline and applicable 'look-back' period of § 6511[] in order to demonstrate a waiver of sovereign immunity by the United States."  *Family Leadership Found. v. United States*, No. 06 CV-678-PHX-SMM, 2006 WL 3218661, at *2 (D. Ariz. Nov. 3, 2006) (citing *Omohundro v. United States*, 300 F.3d 1065, 1067-69 (9th Cir. 2002)).

### 1.    Plaintiffs' Tax Returns as Administrative Claims.

Defendant contends that the Court does not have subject matter jurisdiction over Count 1 – which seeks to recover a refund for the 2013 tax year – because Plaintiffs failed

to file a proper administrative claim for a refund under 28 U.S.C. §§ 6511 and 7422(a). Defendant argues that Plaintiffs' formal administrative claim, filed with the IRS on March 23, 2018, was untimely because it was filed more than three years after April 25, 2014, the date when Plaintiffs filed their original 2013 tax return.  Doc. 19-1 at 4.

Plaintiffs appear to argue that the date of their amended 2013 return (April 15, 2015), rather than the date of their original return, should be the date from which the statute of limitations period is calculated.  Doc. 40 at 6.  This is not correct.  "[T]he statute of limitations time periods set out by . . . § 6511(a) are three years from the time of the filing of the *original* return or two years from the time of the tax payment, whichever is later." *Chaney v. United States*, 45 Fed. Cl. 309, 317 (1999) (emphasis added).

Plaintiffs also contend that the Court must treat their amended 2013 tax return as an administrative claim for purposes of complying with § 7422's exhaustion requirement. Doc. 40 at 3-6.  The Court agrees.  Plaintiffs' complaint alleges that they filed an amended return on April 15, 2015, and requested a refund of $1,121.96 for the 2013 tax year. Doc. 1 ¶¶ 30-32.  Defendant does not dispute this assertion and does not meaningfully address Plaintiffs' argument.  As the Court previously noted, an amended income tax return "may satisfy the § 7422(a) claim requirement."  *Waltner*, 2019 WL 176800, at *3; *see also Sorenson v. Sec'y of Treasury of U.S.*, 752 F.2d 1433, 1439 (9th Cir. 1985) ("Since even 'an informal claim which fairly gives notice of a taxpayer's intention to press for a refund of taxes is sufficient to satisfy the statutory requirement,' the letter, as well as the filing of Form 1040X, satisfied the claim requirement of section 7422(a).") (citation omitted); 26 C.F.R. § 301.6402-3(a)(5) ("A properly executed individual, fiduciary, or corporation original income tax return or an amended return (on 1040X or 1120X if applicable) shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return (or amended return).").

Thus, Plaintiffs' amended 2013 tax return, filed on April 15, 2015, was at least an informal claim for purposes of § 7422.  Under the informal claim doctrine, an informal claim, even with "technical deficiencies," that is filed within the limitations period stops

the running of the statute of limitations where it is followed by a valid refund claim filed after the statutory period has run. *Comm'r v. Ewing*, 439 F.3d 1009, 1015 (9th Cir. 2006) (citing *First Sec. Bank of Idaho, N.A. v. Comm'r*, 592 F.2d 1046, 1049 (9th Cir. 1979)); *see also Kaffenberger v. United States*, 314 F.3d 944, 954 (8th Cir. 2003) ("[T]he Supreme Court has endorsed informal claims filed within the statutory period that have technical deficiencies, as long as a valid refund claim is subsequently made after the period has run. In essence, an informal claim that puts the IRS on notice that a claim is being made tolls the statute of limitations until the deficiencies are corrected in a subsequent refund claim.") (citation omitted).  Thus, even if Plaintiffs' 2015 amended return had technical deficiencies (an issue not addressed by the parties), Plaintiffs followed it with a formal administrative claim on March 23, 2018, which "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." *Synergy Staffing, Inc. v. IRS*, 323 F.3d 1157, 1160-61 (9th Cir. 2003) (quoting 26 C.F.R. § 301.6402-2(b)(1)).  Because Plaintiffs' 2015 filing of their amended return tolled the statute of limitations, their March 23, 2018 claim was not time-barred.[2]

## 2.      § 6511 Look-back Provision.

Defendant argues that Count 1 is also barred by the "look-back" provision of § 6511, which limits recovery to taxes paid "within the period[] immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A); Docs. 19-1 at 4, 47 at 3.  Defendant contends  that because the refund Plaintiffs seek in Count 1 consists solely of 2013 tax credits, and Plaintiffs are deemed to have paid those credits on April 15, 2014 – more than 3 years

---

[2] It is possible that the amended returns filed by Plaintiffs were not valid returns and therefore could not qualify as administrative claims.  The Federal Circuit held that Plaintiffs' amended returns for earlier tax years were not valid because they did not reflect an "honest and reasonable intent to supply information required by the tax code." *Waltner v. United States*, 679 F.3d 1329, 1334 (Fed. Cir. 2012).  Defendant does not make this argument with respect to Plaintiffs' amended 2013 return, and the Court therefore will not address it.

before their March 23, 2018 claim – the credits are not within the three-year look-back period and therefore are not recoverable.  Doc. 19-1 at 4.

Plaintiffs respond that their 2013 earned income credits ("EIC") were allowed by the IRS on May 9, 2016, after the filing of the 2013 amended return, and thus fall within the look-back period.  Doc. 40 at 9.  This is not correct.  As explained in *Israel v. United States*, 356 F.3d 221 (2d Cir. 2004), "amounts refundable by operation of the EIC are deemed paid as of the filing deadline for the tax year in question."  *Id.* at 225.  Thus, Plaintiffs' credits for the 2013 EIC are deemed to have been paid by Plaintiffs on April 15, 2014.  Plaintiffs argue that the Court should not follow *Israel* because, unlike the taxpayers in that case, who had $140 withheld from their taxes, Plaintiffs had no income withheld in 2013.  But the same was true of the *Israel* taxpayers for the years 1994 and 1995, and yet the holding in the case applied to those years as well.  *Id.* at 225 ("The question arises whether § 6513(b) similarly applies to those amounts the Israels seek refunded that they did not, in fact, *pay*.  We hold that is does.") (emphasis in original).

Defendant contends that the Court does not have jurisdiction over Count 1 because the April 15, 2014 payment date is more than three years before Plaintiffs' March 23, 2018 administrative claim and therefore does not fall within the look-back period.  But as explained above, the operative date for Plaintiffs' 2013 refund claim is April 15, 2015, the date they filed an amended return seeking the refund.  *See Sorenson*, 752 F.2d at 1439; 26 C.F.R. § 301.6402-3(a)(5).  That date is less than three years after the EIC was deemed paid.  Defendant's argument is not persuasive.

**B.    Other Jurisdictional Arguments.**

Defendant makes several other jurisdictional arguments.  The Court will consider them by count-by-count.

**1.    Count 1.**

Defendant contends that the 2013 tax returns are not proper refund claims because the IRS applied the 2013 refund to penalties in the 2004 year, and Plaintiffs therefore were required to file a claim for 2004.  Doc. 19-1 at 3.  In the previous iteration of this case, the

Court addressed whether Waltner was required to file a separate refund claim in order to exhaust administrative remedies when his 2016 refund was applied to his 2008 liability. The Court held that Waltner was required to file an administrative claim for 2008 within two years of the date of payment, and had not done so. *Waltner*, 2019 WL 176800 at * 5 (relying on *Greene-Thapedi v. United States*, 549 F.3d 530, 532 (7th Cir. 2008)). The Court noted that Waltner's 2016 claim did not "provide fair notice to the IRS of his claim that he did not owe 2008 taxes." *Id*.

The same is not true here. Plaintiffs' March 23, 2018 administrative refund claim expressly refers to the applications of the 2013 refund to the 2004 tax year. *See* Doc. 19-16 at 2-3. The claim put the IRS on notice of the arguments Plaintiffs were making with respect to the 2004 tax year, and the Court has already concluded that the filing of an informal claim on April 15, 2015 tolled the statute of limitations, making Plaintiffs' March 23, 2018 claim timely. The Court has jurisdiction over Count 1.

### 2. Count 3.

Count 3 alleges that Plaintiffs are entitled to a refund of $6,038.77 from the 2015 tax year that was applied to penalties owed for 2004 and 2007. Doc. 1 ¶¶ 63-70. Defendant provides records that the IRS applied $2,984.00 of Plaintiffs' 2015 refund to penalties assessed against Waltner for his 2007 tax year, and $3,054.77 to the penalties assessed against him for the 2004 tax year. Docs. 19-6 ¶ 8, 19-9 at 4, 19-6 ¶ 6, 19-7 at 3. Defendant argues that because Waltner still owes $12,016.00 for penalties in 2007 and $14,500.00 for penalties in 2004, the Court has no jurisdiction. Doc. 19-1 at 10.

Regarding the $2,984.00 portion of the refund request, Plaintiffs contend they fully paid that amount as shown on the IRS's own Form 4340 for that year. *See* Doc. 40 at 9.[3] But the Form 4340 for Waltner's 2007 account shows a balance still owed of $12,016.00. Doc. 19-9 at 9. This includes $15,000.00 in 2007 penalties that were correctly re-imposed

---

[3] Plaintiffs note that the refund was credited to that assessment on June 6, 2016. Doc. 40 at 9. But IRS record indicates this overpayment credit was applied on April 15, 2016. Doc. 19-9 at 4.

on Waltner in 2018 after the penalties in this account and others had been erroneously abated by the IRS, as addressed below.  *See id.* at 6.  Because there is a balance due on the penalties in Waltner's 2007 account, the Court does not have jurisdiction over this portion of Count 3.  *See Flora v. United States*, 362 U.S. 145, 150-51 (1960) (holding that 28 U.S.C. § 1346(a)(1) "requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court"); *see also PCCE, Inc. v. United States*, 159 F.3d 425, 428-29 (9th Cir. 1998) (holding that district court lacked jurisdiction over plaintiff's refund claim because assessment was not paid in full: "[N]othing in the record suggests that the [tax] assessment has been 'fully satisfied.'  The root of this requirement is the long-standing 'pay first and litigate later' principle explained in *Flora*[.]"); *Korobkin v. United States*, 988 F.2d 975, 976 (9th Cir. 1993) (citing *Flora* and affirming dismissal of suit challenging tax penalty assessments because "the district court lacks jurisdiction over the refund suit unless the taxpayer pays the entire penalty first"); *Diamond*, 603 F. App'x at 949.

Regarding the $3,054.77 portion of Plaintiffs' refund claim, Defendant agrees that the total of Plaintiffs' refunds credited to the 2004 tax year exceeds the $5,000 penalty assessed against Waltner for that year.  Doc. 47 at 6-7.  Defendant accordingly concedes that the Court has jurisdiction over this portion of Count 3.  Doc. 47 at 6-7.

### 3.   Count 4.

In Count 4, Van Hoey seeks a refund from the 2016 tax year that was applied to a civil penalty assessed for the 2007 tax year.  Doc. 1 ¶¶ 75-82.  Defendant argues that Van Hoey still owes a balance of $11,299.44 on the 2007 penalties.  Doc. 19-1 at 11.

Plaintiffs do not directly address the balance owed on Van Hoey's account, but contend that "the extant penalties were paid – anything that happened later cannot negate that fact," and allege that the Form 4340 was manipulated and "evidences IRS tampering."  Doc. 40 at 12.  Plaintiffs point the Court to Van Hoey's declaration, which highlights various purported discrepancies between Defendant's Form 4340 filed in this case and a Form 4340 "obtained in prior litigation and kept in [Van Hoey's] files."  Doc. 42 ¶¶ 41.

Plaintiffs assert, without elaboration, that these discrepancies "indicate a lack of trustworthiness and negligible probative value." *Id.* ¶ 41.  But even if the version of Form 4340 from Van Hoey's files could be deemed authentic and admissible – a fact that is not readily apparent – she does not purport to be an expert in interpreting Form 4340 and she provides no information about the manner in which the form is maintained and modified over time by the IRS.  Indeed, Van Hoey states that she "take[s] no position that one version of the forms is superior to the other." *Id.*  As a result, the Court has no basis for concluding that Defendant's Form 4340s attached to the declaration of Denice Gallagher – as discussed more fully below – are unreliable.

Nor can the Court accept Plaintiffs' argument that "the taking of [Van Hoey's] 2016 overpayment in collection of the illegal 2018 assessments was an exaction [and that] requiring payment of any part of it does not comport with due process or justice." *See* Doc. 40 at 12.  The "[l]evying of taxes does not constitute a Fifth Amendment taking unless the taxation is so 'arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property[.]'" *Quarty v. United States*, 170 F.3d 961, 969 (9th Cir. 1999) (citing *Brushaber v. Union Pac. R. Co.*, 240 U.S. 1, 9 (1916)).  Plaintiffs have not established that the taxation here was arbitrary.  In fact, the Tax Court clearly found that Plaintiffs were liable (*see* Doc. 19-22 at 5-6) and allowed the government to proceed with the collection of penalties imposed for tax years 2003 through 2007 (Doc. 19-23 at 1).  Because Van Hoey still owes $11,299.44 on the penalties assessed for the 2007 tax year, the Court does not have jurisdiction over Count 4.  *Flora*, 362 U.S. at 150-51.

### 4.    Count 5.

Count 5 alleges that Plaintiffs are entitled to a refund from the 2017 tax year that was applied to Waltner's penalty assessed for the 2005 tax year.   Doc. 1 ¶¶ 83-93.  Defendant contends that Plaintiffs have failed to prove that they filed a proper refund claim, and that they failed to reference the 2017 overpayment in their March 23, 2018 claim.  Docs. 19-1 at 12, 47 at 8.

Plaintiffs contend that Waltner's 2017 tax return "was his administrative claim" and that the IRS "illegally assessed a new penalty" in 2018.  Doc. 40 at 12-13.  But even if Waltner's 2017 return is considered an informal claim, Plaintiffs do not assert that they followed it with a formal refund claim as required by the informal claim doctrine.  *See Ewing*, 439 F.3d at 1015 (citing *First Sec. Bank of Idaho, N.A.*, 592 F.2d at 1049).  Because Plaintiffs failed to include this refund in their March 23, 2018 administrative claim, the Court does not have jurisdiction.  *See* Doc. 19-16.  Furthermore, the Court discusses and rejects below Plaintiffs' argument that the IRS "illegally assessed a new penalty" in 2018 because the "IRS was divested of its authority to compromise" the case after litigation responsibility was transferred to the DOJ during the Ninth Circuit appeal.  *See Faust*, 33 Fed. Cl. at 809-10; *United States v. Jackson*, 511 F. App'x 200, 202-03 (3d Cir. 2013).  For both reasons, the Court lacks jurisdiction over Count 5.

### 5. Count 6.

Count 6 concerns Plaintiffs' request for a $1,183.57 refund from the 2017 tax year that was applied to a penalty assessed on Van Hoey's 2004 tax return.  Doc. 1 ¶¶ 94-104.  Plaintiffs argue that Van Hoey's "2017 return is likewise her administrative claim for refund of her 2017 overpayment . . . so the Court has jurisdiction[.]"  Doc. 40 at 13.  Plaintiffs provide no further argument.

As with Count 5, even if the 2017 return was an informal claim, Plaintiffs failed to include this claim in their March 23, 2018 administrative claim, thus failing to submit a valid refund claim.  *See Ewing*, 439 F.3d at 1015 (citing *First Sec. Bank of Idaho, N.A.*, 592 F.2d at 1049).  The Court does not have jurisdiction over Count 6.

### 6. Count 7.

Plaintiffs assert damages under 26 U.S.C. § 7433 and allege the IRS did not send them a notice of deficiency for 2007.  Defendant cites *Miller v. United States*, 66 F.3d 220, 222 (9th Cir. 1995), which holds that liability under § 7433 cannot be based on the assessment of a tax.  Plaintiffs assert, however, that they are seeking damages based not on assessment of a tax, but on collection of a tax – crediting their refund claims against past

11

penalty amounts.   Section 7433 prohibits improper conduct "in connection with any *collection* of Federal tax."   26 U.S.C. § 7433(a) (emphasis added).   The Court cannot conclude that it lacks jurisdiction over Count 7 on this basis.

Defendant also argues that there is "no jurisdiction regarding Count 7 because the cause of action relating to an alleged failure of the IRS to mail a notice of deficiency in 2009 accrued more than two years before [Plaintiffs] filed this suit.   Doc. 19-1 at 14 (citing *Tritz v. United States*, 698 Fed. App'x 342, 343 (9th Cir. 2017); 26 U.S.C. § 7433(d)(3)). Plaintiffs contend, however, that they did not become aware until March 2018 that the IRS "had made an unauthorized deficiency assessment and had unlawfully been collecting multiple, unauthorizing civil penalties, but also that it had applied their overpayments to the 2007 deficiency assessment."   Doc. 40 at 15.   Defendants do not provide a meaningful response.   The Court has jurisdiction over Count 7.

### C.    Jurisdiction Summary.

The Court concludes that it lacks jurisdiction over Counts 4, 5, and 6, and over part of Count 3.   The Court has jurisdiction over Counts 1, 2, part of 3, 7, 8, and 9.   Although the usual procedure at this point would be to address Defendant's summary judgment motion only on those claims for which it has found jurisdiction, the summary judgment arguments on all of the claims are heavily inter-related.   Even single counts often relate to multiple tax years, including tax years at issue in other counts.   Additionally, the parties' jurisdictional arguments are lengthy, complicated, and difficult to unravel.   Because the Court is confident Plaintiffs will appeal this decision, and the Court of Appeals may disagree with some of the Court's jurisdictional rulings, the Court will include its analysis on the merits of all of Plaintiffs' claims.   This is done so the Court of Appeals can, in one sitting, address the merits of all claims on which it finds jurisdiction in this exhaustively-litigated series of tax disputes.

### III.   Motion for Summary Judgment.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment – the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]

## A. Collateral Estoppel – Counts 1 through 6.

Collateral estoppel bars re-litigation of issues that have been previously decided by a valid and final judgment. The party asserting collateral estoppel "bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992). "For the doctrine to apply: (1) the issue must be identical to one alleged in prior litigation; (2) the issue must have been 'actually litigated' in the prior litigation; and (3) the determination of the issue in the prior litigation must have been 'critical and necessary' to the judgment." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016).

Section 6702 of the Internal Revenue Code provides that the IRS may impose a $5,000 penalty on a person who files a tax return that contains incomplete or incorrect information and is "based on a position which the Secretary has identified as frivolous" or

---

[4] Defendant moves for summary judgment, but fails to comply with Local Rule 56.1(a), which requires "a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." Doc. 19. Defendant has not filed a separate statement of facts. The court will nevertheless consider the motion and will interpret the evidence submitted with Defendant's motion in the light most favorable to Plaintiffs. Fed. R. Civ. P. 56(a).

"reflects a desire to delay or impede the administration of Federal tax laws."  26 U.S.C. § 6702(a).  Many frivolous filing penalties – which the court will refer to in this order a "6702 penalties" – have been imposed on Plaintiffs.  Defendant contends that Plaintiffs' claims for the refunds at issue in Counts 1 through 6 are barred by collateral estoppel because the 6702 penalties to which the refunds were applied have been upheld by the Tax Court in previous litigation.  Doc. 19-1 at 4-7.  The Court will describe Plaintiffs' claims, describe the parties' previous litigation, apply the doctrine of collateral estoppel, and then address the many arguments made by Plaintiffs.

### 1.   Plaintiffs' Claims.

Count 1 alleges that Plaintiffs are owed a tax refund from their joint 2013 return, filed on April 25, 2014, and amended on April 15, 2015.  Doc. 1 ¶¶ 30-40.  IRS records show that Plaintiffs made an overpayment in 2013 of $1,222, which was applied to an unpaid 6702 penalty they owed from 2004.  Docs. 19-1 at 3, 19-6 ¶ 6.  Plaintiffs dispute the validity of any penalty for 2004.  Doc. 1 ¶¶ 36-37.

Count 2 seeks a tax refund from Plaintiffs' joint 2014 return, filed on April 15, 2015.  *Id.* ¶¶ 42-57.  IRS records shows that Plaintiffs made an overpayment in 2014 of $8,759.17, $1,918.86 of which was applied to 6702 penalties for 2005 and $6,840.13 of which was applied to other tax liabilities from 2007.  Docs. 19-1 at 7, 19-6 ¶¶ 11-12.  Plaintiffs dispute the validity of any 2005 penalty and deny liability for 2007.  Doc. 1 ¶¶ 52-54.

Count 3 seeks a tax refund from Plaintiffs' joint 2015 return, filed on April 25, 2016.  *Id.* ¶¶ 58-70.  IRS records show that Plaintiffs made an overpayment in 2015 of $6,038.77 which was applied to 6702 penalties from 2004 and 2007.  Docs. 19-1 at 9, 19-6 ¶¶ 6, 8.  Plaintiffs dispute the validity of any penalties for 2004 and 2007.  Doc. 1 ¶¶ 66-67.

In Count 4, Van Hoey alleges that she is entitled to a refund from the 2016 tax year.  *Id.* ¶¶ 75-82.  IRS records indicate that her 2016 refunds of $3,107.93 and $92.63 were applied to 6702 penalties assessed for 2007.  Docs. 19-1 at 11, 19-6 ¶ 9.  Van Hoey disputes the validity of any penalties for 2007.  Doc. 1 ¶ 78.

In Count 5, Waltner alleges that he is entitled to a refund from the 2017 tax year. *Id.* ¶¶ 84-93.  IRS records indicate that his 2017 refund of $3,081.14 was applied to a 6702 penalty assessed for the 2005 tax year.  Docs. 19-1 at 12, 19-6 ¶ 11.  Waltner disputes the validity of any 2005 penalties.  Doc. 1 ¶ 89.

In Count 6, Van Hoey seeks a refund of her $1,183.57 overpayment in 2017. *Id.* ¶¶ 95-104.[5]  IRS records indicate that her 2017 overpayment was applied to a 6702 penalty assessed for the 2004 tax year and a Tax Court sanction from that same year. Doc. 19-1 at 12, 19-6 ¶ 10.  Van Hoey disputes the penalty and sanction.  Doc. 1 ¶ 100.

## 2.   Previous Tax Court Case.

Defendant's collateral estoppel argument is based on a 2015 Tax Court ruling that 6702 penalties were properly imposed on Plaintiffs for various years, including the years at issue here – 2004, 2005, and 2007.  Because those penalties were litigated and upheld, Defendant argues that Plaintiffs' claims in this case – that the later refunds were improperly applied to satisfy the penalties – are barred by collateral estoppel.  Relevant portions of the Tax Court decision are as follows:

> Petitioners filed Forms 1040, U.S. Individual Income Tax Return, relating to 2003, 2004, 2005, 2006, and 2007 (years in issue). . . . Petitioners reported taxable income and tax liabilities on their 2003, 2004, 2005, and 2006 Forms 1040.  Petitioners failed to pay their tax liability relating to 2006.  On their 2007 Form 1040, petitioners reported zero taxable income and zero tax liability. . . .
>
> Between January and February 2008, petitioners sent respondent two Forms 1040X, Amended U.S. Individual Income Tax Return, relating to 2006, and four additional Forms 1040X, one relating to each of 2003, 2004, 2005, and 2007. Each Form 1040X stated that petitioners had zero tax liability and zero adjusted income relating to the relevant year.  Between April 2008 and August 2009, petitioners sent respondent four additional Forms 1040X relating to 2007.  Each additional 2007 Form 1040X stated that petitioners

---

[5] Van Hoey also alleges that these funds were applied to 2007 tax year penalties, but this appears to be a typo.  Doc. 1 ¶ 101.  Her preceding allegations in this count (*id.* ¶¶ 99, 100) refer to the 2004 tax year, and the government asserts that $1,184.00 from her 2017 taxes was applied entirely to civil penalties for 2004.  Doc. 19-1 ¶ 10.

15

had zero income tax liability. . . . In addition, petitioners attached to their Forms 1040X "correcting" Forms 1099.   On these forms, petitioners purported to correct Forms 1099 submitted by third parties reporting interest income, dividends, and non-employee compensation received by petitioners. Petitioners reported zero income on each "correcting" Form 1099 and stated that the original Forms 1099 "erroneously alleged" payments to petitioners that they did not receive, or that were not "gains, profit or income".

\* \* \*

Respondent did not process any of petitioners' Forms 1040X and assessed each petitioner (i.e., Ms. Waltner and Mr. Waltner) separate section 6702 frivolous return penalties, of $5,000 each, relating to each Form 1040X.   In sum, respondent assessed petitioners $5,000 each, relating to their 2003 Form 1040X; $5,000 each, relating to their 2004 Form 1040X; $5,000 each, relating to their 2005 Form 1040X; $10,000 each, relating to their two 2006 Forms 1040X; and $25,000 each, relating to their five 2007 Forms 1040X. Respondent also assessed each petitioner a $5,000 section 6702 penalty relating to petitioners' 2007 Form 1040.

\* \* \*

Petitioners contend that they are not liable for section 6702 penalties relating to their 2007 Form 1040 and their Forms 1040X relating to the years in issue. . . . [W]e review petitioners' section 6702 penalties de novo.

A penalty for filing frivolous returns may be assessed against a taxpayer if (1) the taxpayer files a document purporting to be an income tax return, (2) the purported tax return lacks the information necessary to gauge the substantial correctness of the self-assessment or lacks information indicating the self-assessment is substantially correct, and (3) the taxpayer's position is based on a position which the Commissioner has identified as frivolous, or demonstrates a desire to delay or impede the administration of Federal income tax laws.  Multiple section 6702 penalties relating to the same tax year may be assessed if a taxpayer submits multiple frivolous returns relating to such year.

\* \* \*

The Forms 1040, 1040X and 1041 contained substantially incorrect information.   The Commissioner identified the submission of such "zero returns" as frivolous prior to the dates on which petitioners submitted the

> Forms 1040, 1040X, and 1041.  Petitioners had taxable income relating to each relevant tax year, and their 2007 Form 1040, and Forms 1040X relating to the years in issue, were frivolous returns. . . . Accordingly, petitioners are liable for the section 6702 frivolous return penalties.

Doc. 19-22 at 1-5 (citations omitted).  Plaintiffs appealed this decision to the Ninth Circuit, but their appeal was dismissed as untimely.  *Waltner*, 769 F. App'x at 449.

Plaintiffs filed another action in the Court of Federal Claims seeking to recover refunds for the same years at issue in the Tax Court case, and were unsuccessful.  Although Defendant does not rely on that case for collateral estoppel purposes, the affirming opinion by the Federal Circuit provides additional relevant background information:

> For each of the taxable years 2004, 2005, and 2006, the taxpayers filed Form 1040.  On each of these forms, the taxpayers reported taxable income, as well as taxable business income, capital gains, taxable ordinary dividends, and taxable interest.  Accompanying each tax return was a Form W-2 for Mr. Waltner that reported wage income paid to him by New Century Mortgage Corporation and other companies.

> Starting in 2008, the taxpayers began filing amended income tax returns on Form 1040X.  For the 2004 taxable year, the taxpayers adjusted their gross income from $48,631 to $370, which was the amount of unemployment compensation received by Mrs. Waltner.  On the accompanying Form 4852, Substitute for Form W-2, the taxpayers reported that Mr. Waltner's wages were zero and alleged that the payer New Century Mortgage Corp. "erroneously alleged payments of IRC section 3401(a) and 3121(a) wages." . . . The taxpayers also included Form 1099-DIV, listing the amount of dividends received as zero. The taxpayers submitted this form to rebut the payer's submission which alleged a payment reportable under 26 U.S.C. § 6042. The taxpayers submitted Forms 1099-INT, which all listed the amount of interest income as zero, and Form 1099-MISC listing zero non-employee compensation. The taxpayers seek $8,334.00, plus interest, as a refund claim for tax year 2004.

> Similarly, the taxpayers filed an amended income tax return Form 1040X for tax year 2005, this time listing no taxable income and $0 in tax owed. As with the 2004 tax year, the taxpayers submitted various other amended forms, including Form 4852, Form 1099-DIV, various Forms 1099-INT and Forms 1099-MISC, all of which contained zeros for income and taxes owed.

* * *

In 2008, taxpayers also filed their federal income tax return Form 1040 for tax year 2007, reporting taxable income of $0.00, a reported tax due of $0.00, and an overpayment of $8,480.88.  Rather than submitting a W-2 Form, they submitted Form 4852, Substitute for Form W2, reporting Mr. Waltner's wages as zero and asserting that the W-2 provided by the payer "erroneously alleged payments of IRS Section 3401(a) 'wages'" even though he "received no such 'wages.'" . . . As with the amended tax returns, the taxpayers submitted Form 1099-INT, reporting zero interest income received.

*Waltner*, 679 F.3d at 1330-31.  This background explains why the IRS imposed § 6702 frivolous filing penalties on Plaintiffs for tax years 2004, 2005, and 2007.

### 3. General Collateral Estoppel Conclusions.

Counts 1-6 seek to recover refunds generated in 2013-2017 that were applied by the IRS to 6702 penalties and other tax obligations for 2004, 2005, and 2007.  The basis for these claims is that the penalties and other tax obligations for those years are invalid. Plaintiffs allege in their complaint that the civil penalties assessed for 2004 were "unlawfully asserted" for five different reasons (Doc. 1 ¶¶ 36, 66, 100), that the civil penalties assessed for 2005 were "unlawfully asserted" for four reasons (*id.* ¶¶ 52, 89), and that the civil penalties assessed for 2007 were not an "established, legally-enforceable, outstanding tax debt" (*id.* ¶¶ 67, 78).  And yet each of these 6702 penalties was litigated in the Tax Court.  That court "review[ed] petitioner's section 6702 penalties de novo" and upheld all of them.  Doc. 19-22 at 5.  The Tax Court then allowed the IRS to proceed with collection of the penalties.  Doc. 19-23 at 1.

Plaintiffs are collaterally estopped from relitigating the validity of the 2004, 2005, and 2007 penalties.  All of the elements of collateral estoppel are satisfied: (1) Plaintiffs' claims that the penalties are invalid are the same claims they made before the Tax Court; (2) the validity of the 6702 penalties was actually litigated before the Tax Court; and (3) the determination of that issue was a critical and necessary part of the Tax Court's judgment. *Beauchamp*, 816 F.3d at 1225.  Nothing more is required.

18

Plaintiffs attempt in this Court to make some new arguments as to why the penalties are invalid, but those new arguments are also foreclosed by collateral estoppel.  Having clearly litigated the validity of the 6702 penalties, Plaintiffs cannot relitigate the penalties on the basis of new arguments.  *See Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) ("'once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case'") (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)); *Weiner v. United States*, 255 F. Supp. 2d 624, 643 (S.D. Tex. 2002) ("Weiner's desire to raise new arguments that could have been but were not made before the Tax Court does not defeat the fully and vigorously litigated element of collateral estoppel."); Restatement (Second) of Judgements § 27 cmt. c at 253 (if previously litigated "issue was one of law, new arguments may not be presented to obtain a different determination of that issue").

The Court accordingly holds that Plaintiffs are barred by collateral estoppel from contesting the following matters:

- **Count 1** – $5,000 in 6702 penalties for Waltner's 2004 tax year, to which the IRS applied Plaintiffs' 2013 refund amount of $1,122.00 (Docs. 1 ¶¶ 30-36; 19-6 ¶ 6; 19-7 at 4);[6]

- **Part of Count 2** – $1,918.86 in 6702 penalties for tax year 2005, to which the IRS applied Plaintiffs' 2014 refund amount of $1,918.86 (Docs. 1 ¶¶ 46, 53; 19-6 ¶ 11; 19-12 at 3);[7]

- **Count 3** – $5,000 in 6702 penalties for Waltner's 2004 tax year, to which the IRS applied $3,054.77 of Plaintiffs' 2015 refund amount (Docs. 1 ¶¶ 63; 19-6 ¶ 6; 19-7 at 4), and $15,000 in 6702 penalties for Waltner's 2007 tax year,

---

[6]  The actual refund amount for 2013 was $1,121.96, but the IRS (in this instance and in others that will not be specifically mentioned) rounded up to $1.122.00.

[7]  The other portion of Count 2 concerns application of $6,840.13 from the 2014 refund to other tax liabilities for the year 2007, an issue addressed below.

to which the IRS applied $2,984.00 of Plaintiffs' 2015 refund amount (Docs. 1 ¶¶ 65; 19-6 ¶ 8; 19-9 at 4);

- **Count 4** – $15,000 in 6702 penalties for Van Hoey's 2007 tax year, to which the IRS applied $3,107.93 and $92.63 of Van Hoey's 2016 refund amount (Docs. 1 ¶¶ 75-77; 19-6 ¶ 9; 19-10 at 6);

- **Count 5** – $3,081.14 in 6702 penalties for tax year 2005, to which the IRS applied $3,081.14 of Waltner's 2017 refund amount (Docs. 1 ¶¶ 85-88; 19-6 ¶ 11; 19-12 at 3); and

- **Count 6** – $5,000 in 6702 penalties for Van Hoey's 2004 tax year, to which the IRS applied $1,184.00 of Van Hoey's 2017 refund amount (Docs. 1 ¶¶ 96-99; 19-6 ¶ 10; 19-11 at 5).

### 4. Plaintiffs' Evidentiary Challenges.

Plaintiffs make a host of evidentiary challenges to the proof submitted by Defendant in support of its collateral estoppel argument. Most of them are unnecessary because the Court can make the collateral estoppel determination by reviewing the Tax Court decision (of which it can take judicial notice), the pleadings in this case, and the Gallagher declaration and exhibits discussed below. The Court nonetheless will address each of Plaintiffs' objections.

Plaintiffs argue that the government's declarations of Kaaren Shanahan and Denice Gallagher are improper because Shanahan and Gallagher lack personal knowledge of the facts and the Gallagher declaration contains conclusory statements and "otherwise inadmissible opinion evidence that cannot support a motion for summary judgment." Doc. 41 at 1-2. The Court does not agree.

Shanahan is a Supervisory Tax Analyst and a custodian of records for the IRS. Doc. 19-3 ¶¶ 1, 3. She declares that "IRS records are made at or near the time by – or from information transmitted by – someone with knowledge," the "records are kept in the ordinary course of the regularly conducted activity of the IRS," that making records is a "regular practice" of the IRS, and that she has access to IRS records. *Id.* ¶ 3. She works

in the Automated Underreporter ("AUR") program, which checks information on taxpayer returns each year and identifies returns with discrepancies for potential inclusion in the AUR program.  *Id.* ¶ 4.  Her testimony on the 2007 notice of deficiency is discussed below. The Court does not agree that Shanahan lacks personal knowledge.

Gallagher is a Revenue Officer Advisor who has been with the IRS for more than 30 years.  Doc. 19-6 ¶¶ 1-3.  She was specifically assigned to monitor Plaintiffs' case and assist the DOJ in this matter, and makes her declaration on the basis of her personal knowledge and review of IRS records.  *Id.* ¶¶ 4-5.  The Court does not agree that her declaration contains conclusory statements.  She explains the contents of several Form 4340s attached as exhibits to her declaration – forms that reflect Plaintiffs' tax years 2004, 2005, and 2007.[8]  The forms all bear Certificates of Official Records from the IRS. *See* Docs. 19-7, 19-9 through 19-13.  One additional exhibit is a 2013 tax return filed and signed by Plaintiffs.  *See* Doc. 19-8.  The Court concludes that the information contained in Gallagher's declaration, based on her years of experience and her knowledge of this case, and the exhibits attached to her declaration, would be admissible at trial.  *See* Fed R. Evid. 602 and 701 (Gallagher testimony based on her personal knowledge and matters reasonable perceived by her), 902(1) (certified and sealed Forms 4340), 801(d)(2)(A) (Plaintiffs' signed tax returns).[9]

As already mentioned, Plaintiffs challenge the Form 4340s attached to Gallagher's declaration.  Doc. 41 at 2-3.  Plaintiffs point to various purported discrepancies between those forms and Form 4340s "obtained in prior litigation and kept in [Van Hoey's] files." Doc. 42 ¶ 41.  For reasons explained above, the Court does not find this objection persuasive.

---

[8] IRS Form 4340 is a certificate of assessments and payments, which "reflects the taxes assessed to and paid by the taxpayer in a particular year."  *United States v. Jimenez*, 513 F.3d 62, 79 n.4 (3d Cir. 2008).

[9] It also is likely that Gallagher could provide expert opinions under Rule 702 based on her years of experience at the IRS.

The Ninth Circuit has upheld the admission of Form 4340 as a public record and probative evidence.  *See Hughes v. United States*, 953 F.2d 531, 539-40 (9th Cir. 1992). Contrary to Plaintiffs' allegation of improper assessments, many courts regard Form 4340 as "presumptive proof of a valid assessment."  *Cropper v. Comm'r*, 826 F.3d 1280, 1287 (10th Cir. 2016); *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006); *United States v. Filson*, 347 F. App'x 987, 990 (5th Cir. 2009) (per curiam); *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992) (per curiam); *United States v. Zarra*, 477 F. App'x 859, 860 (3d Cir. 2012); *see also Laszloffy v. Comm'r*, 297 F. App'x 628, 629 (9th Cir. 2008) (affirming a grant of summary judgment in favor of the Government because "Form 4340 established that the IRS made a valid tax assessment and sent [the taxpayer] a proper notice of assessment and demand for payment").

Plaintiffs challenge the TXMOD transcript attached to the Shanahan declaration because Shanahan does not attest to the creation of the transcript nor that the string of codes contained in it were made by someone with the proper knowledge.  Doc. 41 at 3; *see* Doc. 19-5 (under seal).  Plaintiffs also assert that the government has obstructed their "efforts to obtain justice in the appeal of the proper lien case, and therefore should be precluded from relying on" the TXMOD transcript here.  Doc. 41 at 3.  The Court does not agree, as Shanahan has provided proper foundation for the TXMOD transcript and the codes contained in it.  *See* Doc. 19-3 ¶¶ 19-22.

Plaintiffs also challenge a number of exhibits submitted with Charles Duffy's declaration.  Doc. 41 at 3-4.  Plaintiffs contend that exhibits 3 and 5 – the government's briefs from the parties' Ninth Circuit Appeal (No. 16-72754) – are not evidence.  *Id.* at 3. But the Court certainly can consider them in understanding the background of this case and the issues previously litigated.   Plaintiffs also challenge a 2012 declaration of IRS employee Shauna Henline, and contend that it is unclear what the declaration was

submitted to prove.  *Id.* at 3.  The declaration provides relevant background for arguments previously addressed in the Tax Court litigation.[10]

Finally, Plaintiffs move to strike the declaration of Michael Lloyd, the government's attorney in the Tax Court case (No. 8726-11L).  Doc. 41 at 4-5.  Plaintiffs argue that because Defendant's motion never relies on Lloyd's declaration, it should be stricken.  The Court does not agree.  The Lloyd declaration is relevant because Plaintiffs seek to rely on an admission allegedly made Lloyd in the prior Tax Court case that is explained in the declaration.  Docs. 19-25, 42 at 11.

## 5.    Plaintiffs' Other Arguments.

### a.    § 6751 Argument.

Plaintiffs argue that the Tax Court did not rule on their argument that the government failed to comply with § 6751 before assessing the penalties in question. Doc. 41 at 7.  Section 6751 states that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."   26 U.S.C. § 6751(b).  Plaintiffs are simply incorrect in their claim that the Tax Court did not rule on this issue:

> Petitioners contend that respondent failed to comply with section 6330(c)(1) because respondent did not demonstrate managerial approval of the assessments of the section 6702 frivolous return penalties in accordance with 6751(b).  We reject petitioners' contention as it relates to the remaining CDP hearings at issue.  With respect to such CDP hearings, the Appeals officer reviewed Forms 4340 relating to each relevant tax year and verified that all applicable laws and administrative procedures were met.  Petitioners failed to demonstrate any irregularity in the assessment procedure that would raise

---

[10] Plaintiffs also assert that Defendant did not provide a "sufficient portion of the record of the prior lien case" to establish the elements of collateral estoppel.  Doc. 41 at 11-12.  The Court does not agree.  Defendant has provided the complete Tax Court order, which shows that Plaintiffs challenged – and the Tax Court upheld – the penalties that are relevant to their claims here.  *See* Docs. 19-22, 19-23.

a question about the validity of the assessments or the information contained in the Forms 4340.

Doc. 19-22 at 7 (citation omitted).

### b.    Plaintiffs' Perjury Arguments.

Plaintiffs allege that the declarations and exhibits filed by Defendant in the Tax Court case "were perjured" and "tampered with or fabricated," thus invalidating the Tax Court judgment.  Doc. 41 at 11.  Plaintiffs also argue that "special circumstances warrant an exception to the normal rules of preclusion."  *Id*. (citing *Montana v. United States*, 440 U.S. 147, 155 (1979)).

Plaintiffs cite to Van Hoey's declaration that "one of the signatures on a penalty approval form for 2005 had been "digitally manipulated and altered" and that Michael Lloyd, the government's attorney in the Tax Court case, "obtained judgment in favor of [the government] by perpetrating a fraud on the U.S. Tax Court."  Doc. 42 ¶ 34(b).  Plaintiffs have otherwise presented no evidence of such fraud, and, as Defendant points out, failed to raise any misconduct in the Tax Court case.

### c.    Timing of the Penalty Assessments.

After the Tax Court decision, Plaintiffs filed a notice of appeal to the Ninth Circuit. Their appeal challenged the validity of the 6702 penalties, but while it was pending, Plaintiffs each paid $500 to the IRS and requested administrative abatement of the penalties.  The abatement requests were granted by IRS personnel, but were later reversed because the IRS did not have authority to abate penalties that had been referred to the DOJ and were in litigation.  Defendant provided this explanation to the Ninth Circuit:

In April 2017, while this appeal was pending, both taxpayers submitted Forms 14402, thereby seeking a reduction of all of their unpaid I.R.C. § 6702 penalties to $500.  And taxpayers each submitted a check for $500 along with this form.  Taxpayers did not inform the undersigned counsel or this Court of the filing of their requests for the I.R.C. § 6702(d) reductions of the penalties at issue in this litigation.  There was a litigation hold in place, which should have alerted all IRS personnel that the Waltners' I.R.C. § 6702 penalties were the subject of ongoing litigation, and thus that reduction of

24

> these penalties . . . was impermissible.    Unfortunately that hold was not
> heeded, and the IRS employees who processed taxpayers' Forms 14402
> erroneously approved the reductions taxpayers requested.    That error is now
> being corrected.

Doc. 19-17 at 30.

The IRS had no authority to compromise the penalties after they had been referred to the DOJ for litigation.  *See* 26 U.S.C. § 7122(a) ("The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense."); *see also Jackson*, 511 F. App'x at 203 (because the IRS "lost its authority to compromise" the taxpayers' liability when it transferred the case to the DOJ, its subsequent abatement of that liability, without authorization from the DOJ, was void) (citing IRS Chief Counsel Notice CC-2011-020, 2011 WL 4402105 (Sept. 15, 2011) ("Abatement of tax for a tax period referred to [the DOJ] that is made without the approval of [the DOJ] is invalid and may be reversed, because the Service lacks the authority to take such action on the taxpayer's account without Justice approval.")).  The incorrectly-abated penalties were re-imposed on January 8, 2018.

Plaintiffs argue that the IRS's abatements should not be considered a "compromise" for purposes of § 7122(a).  Doc. 40 at 10-11.  But the abatement clearly had the effect of reducing Plaintiffs' penalties from thousands of dollars to $500, a clear compromise of IRS tax enforcement actions that had been upheld by the Tax Court.  "Once a tax matter is referred to the [DOJ], only the Attorney General or a person to whom authority has been delegated by the Attorney General may settle the matter."  *Jackson*, 511 F. App'x at 202-03 (quoting *United States v. Forma*, 784 F. Supp. 1132, 1139 (S.D.N.Y. 1992)).

Plaintiffs also argue that penalties re-imposed after the erroneous abatements are not the same penalties that were adjudicated by the Tax Court.  The Court does not agree.  As the Form 4340s attached to the Gallagher declaration show, some of the 6702 penalties

25

upheld by the Tax Court were not abated, and most of those upheld by the Tax Court that were abated were re-imposed on January 8, 2018.

- Form 4340 for Waltner's 2004 tax year shows that the $5,000 in 6702 penalties upheld by the Tax Court (*see* Doc. 19-22 at 2) were not abated (Doc. 19-7 at 2).[11]

- Form 4340 for Van Hoey's 2004 tax year shows that the $5,000 in 6702 penalties upheld by the Tax Court (*see* Doc. 19-22 at 2) were abated (Doc. 19-11 at 4), but were re-imposed on January 8, 2018 (*id.* at 5).[12]

- Form 4340 for Waltner's 2005 tax year shows that the $5,000 in 6702 penalties upheld by the Tax Court (*see* Doc. 19-22 at 2) were imposed in two installments of $1,918.86 and $3,081.14 (totaling $5,000), were abated in the amount of $5,081.14 (Doc. 19-12 at 4), and were re-imposed in the same amount on January 8, 2018 (*id.*).[13]

- Form 4340 for Waltner's 2007 tax year shows that $15,000 in 6702 penalties upheld by the Tax Court (*see* Doc. 19-22 at 2) were abated (Doc. 19-9 at 5), but were re-imposed on January 8, 2018 (*id.* at 6). A number of other 6702 penalties were imposed by the IRS for the 2007 tax year, including another $10,000 in 6702 penalties upheld by the Tax Court. Doc. 19-22 at 2. These were abated and not re-imposed. Doc. 19-9 at 2-7.

- Form 4340 for Van Hoey's 2007 tax year shows that $15,000 in 6702 penalties upheld by the Tax Court (*see* Doc. 19-22 at 2) were abated (Doc. 19-10 at 4), but were re-imposed on January 8, 2018 (*id.* at 5). A number of other 6702 penalties were imposed by the IRS for the 2007 tax year, including another $10,000 in 6702 penalties upheld by the Tax Court. Doc. 19-22 at 2. These

---

[11] The form also shows that a $15,000 penalty was imposed on August 22, 2014. This is the $15,000 Tax Court sanction discussed below.

[12] The form also shows that a $15,000 penalty was imposed on August 22, 2014. This is the $15,000 Tax Court sanction discussed below.

[13] The $81.14 discrepancy is not explained, but is not challenged by Plaintiffs.

26

were abated and not re-imposed.  Doc. 19-10 at 2-7.[14]

Plaintiffs have provided no legal authority to suggest the IRS unlawfully re-imposed the 6702 penalties that had been improperly abated.  Based on IRS records, it is clear that the penalties reinstated in 2018 are the same penalties that were adjudicated by the Tax Court.  Thus, the Court concludes that collateral estoppel bars Plaintiffs claims on all of Counts 1 and 3-6, and the portion of Count 2 that concerns the application of $1,918.86 from the 2014 refund to the 6702 penalties for 2005.  The Court will address the remaining portion of Count 2 – challenging the application of $6,840.13 of the 2014 refunds to a tax deficiency for 2007 – below.[15]

**B.**     **$15,000 in Tax Court Sanctions.**

The Tax Court imposed $15,000 in sanctions against Plaintiffs for making frivolous arguments.  The Internal Revenue Code authorizes the Tax Court to impose up to $25,000 in penalties when taxpayers bring actions "primarily for delay," assert positions that are "frivolous or groundless," or unreasonably fail "to pursue available administrative remedies."  26 U.S.C. § 6673(a).  The $15,000 sanction was added to Plaintiffs 2004 tax years as a "miscellaneous penalty."  *See* Docs. 19-7 at 4, 19-11 at 4.

Plaintiffs argue that the Tax Court "abused § 6673 to impose an excessive and invalid compound penalty, unauthorized under § 6702(a), *for having filed the 2004 amended return*."  Doc. 41 at 15 (emphasis in original).  Plaintiffs argue that the Tax Court's sanction was "intended to destroy" and was imposed as a "penalty for violation of law rather than a tax" in violation of the First, Fifth, and Eight Amendments.  *Id.*

---

[14] One other Form 4340 – for Plaintiffs' joint tax year of 2007 – is attached to Gallagher's declaration.  Doc. 19-13.  It does not reflect 6702 penalties and abatements, but instead shows the additional tax assessment that is addressed below (for which Plaintiffs claim they never received a deficiency notice).

[15] Plaintiffs also appear to argue that the January 8, 2018 re-imposition of the 6702 penalties was not timely.  Doc. 41 at 13-14.  Plaintiffs cite, and the Court has found, no authority indicating this to be the case.

Plaintiffs' argument is not convincing.  The Tax Court applied the sanction because it found Plaintiffs undeterred by earlier warnings and monetary penalties:

> Despite our repeated warnings that we will not tolerate petitioners' frivolous positions and our imposition of substantial monetary penalties, we have been unable to dissuade petitioners.  Petitioners continued to advance positions in this case which they had already been warned were frivolous.  We find a section 6673(a)(1) sanction is warranted and impose a $15,000 penalty in total on petitioners.

*Waltner*, 110 T.C.M. (CCH) 133.  The Ninth Circuit affirmed the sanction.  *See Waltner*, 714 Fed App'x at 727 ("The Tax Court did not abuse its discretion by imposing a $15,000 penalty on the Waltners for taking frivolous positions after warning them that such conduct could lead to sanctions.").  Plaintiffs do not elaborate on precisely how this sanction violates their First, Fifth, and Eight Amendment rights.

Plaintiffs do raise a valid point, however, about the government "doubling the Court sanction imposed."  *See* Doc. 41 at 15.  The Tax Court imposed the $15,000 sanction "in total on petitioners," *Waltner*, 110 T.C.M. (CCH) 133, and yet the sanction appears to have been assessed by the IRS twice – $15,000 on Waltner's 2004 tax account (Doc. 19-7 at 4) and $15,000 on Van Hoey's 2004 tax account (Doc. 19-11 at 4).  This does not, however, affect the Court's conclusion that the Tax Court's imposition of the sanction did not violate Plaintiffs' constitutional rights.

Nor does this double-counting affect the refunds Plaintiffs seek to recover in this case.  Refunds of $1,222.00 for tax year 2013 (Count 1) and $3,054.77 for tax year 2015 (Count 3) were applied against Waltner's 2004 tax year account.  Doc. 19-7 at 4.  The $5,000 in 6702 penalties assessed against Waltner for the 2004 tax year, upheld by the Tax Court (Doc. 19-22 at 2) and reflected in the Form 4340 for this year (Doc. 19-7 at 2), are enough to absorb these refund credits (which total $4,276.77) without applying any of the refund amounts to the $15,000 Tax Court sanction.  Similarly, a refund of $1,184.00 for tax year 2017 (Count 6) was applied against Van Hoey's 2004 tax year account.  Doc. 19-11 at 5.  The $5,000 in 6702 penalties assessed against Van Hoey and upheld by

the Tax Court for this year (Doc. 19-22 at 2), as reflected in Van Hoey's Form 4340 for this year (Doc. 19-11 at 2), are enough to absorb these refund credits without applying any of them to the $15,000 Tax Court sanction. Thus, the double-counted $15,000 Tax Court sanction was not needed to absorb any of the credited refunds Plaintiffs seek to recover. Stated differently, if the Tax Court sanction had not been double-counted, Plaintiffs' refunds still would have been absorbed by the 6702 penalties assessed against Plaintiffs for 2004 and upheld by the Tax Court.[16]

### C.    Count 2 – Notice of Deficiency.

As part of Count 2, Plaintiffs contend that they are entitled to recover $6,840.31 of the 2014 refund that was applied to the income tax assessment for the 2007. They assert that Defendant has not proved that it mailed a notice of deficiency for this tax assessment as required under 26 U.S.C. § 6212.

The Shanahan declaration attaches Postal Service Form 3877 – a Certified Mailing List – showing that the notice was sent by certified mail on October 26, 2009, to Plaintiffs' address in Avondale, Arizona. *See* Docs. 19-3 ¶¶ 10-15, 19-4. The declaration also attaches IRS record TXMOD that sets forth information derived from the IRS's Integrated Data Recovery System ("IDRS"). Shanahan provides information from which the mailing list and the TXMOD record could be admitted at trial as business records. *See* Doc. 19-3 ¶ 3; Fed. R. Evid. 803(6). Shanahan described the codes contained in the TXMOD:

- The code 75 in the bottom line indicates that the IDRS was updated to reflect that a Notice of Deficiency was sent to the Waltners regarding their 2007 tax year; and

---

[16] Form 4340 for Waltner's 2004 tax year shows that another $1,767.81 was applied to Waltner's 2004 tax penalties, apparently from a 2009 refund. Doc. 19-7 at 3. Plaintiffs do not challenge this transaction or seek to recover the 2009 refund. And even if they did, $1,767.81 could easily be satisfied by a single $15,000 sanction, or a small portion of it. This amount therefore does not show that the parties' positions in this case have been affected by double-counting of the sanction. Thus, although the double-counting error clearly should be corrected by the IRS, it has no effect on Plaintiffs' claims.

- The code 90 in bottom line indicates that the IDRS was updated to reflect that an assessment of the proposed 2007 deficiency as set forth in the Notice of Deficiency was made based on the Notice not being petitioned to the United States Tax Court.

Doc. 19-3 ¶ 21.

In response, Plaintiffs provide no substantial evidence that the IRS failed to mail the notice. Van Hoey's declaration asserts in several different ways that Plaintiffs never received the notice. *See* Doc. 42 ¶¶ 4(b)-(h). But even if this evidence could raise a question of fact as to whether Plaintiffs *received* the notice, *receipt* is not required. The relevant statute permits IRS collection efforts if "such notice has been *mailed* to the taxpayer." 26 U.S.C. § 6213(a) (emphasis added). The only argument the Van Hoey declaration makes on mailing is that the actual notice has not been produced by the IRS. *Id.* ¶ 4(a). But the Shanahan declaration provides ample evidence that the notice was in fact mailed.

Plaintiffs do not dispute that they resided at the Avondale address in October 2009. They do argue that the mailing list "lacks essential identifying information necessary to make it probative" (Doc. 41 at 17), but essential identifying information (such as that used to satisfy Federal Rule of Evidence 902(b)(4)) is not required if the proponent provides "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 902(b)(1). Shanahan provides that testimony. Doc. 19-3. And the list clearly is relevant to Plaintiffs' claim that the notice was never mailed to them.

Plaintiffs contend that they obtained an IRS transcript which did not contain Transaction Code ("TC") 494 – IRS's shorthand for a notice of deficiency. Doc. 41 at 17; *see* Doc. 42 ¶ 13. But the absence of TC 494 does not necessarily indicate that the IRS failed to mail a notice. *See Casey v. Comm'r*, 97 T.C.M. (CCH) 1751 (T.C. 2009) (finding

petitioner's argument regarding the absence of TC 494 unpersuasive, because, as the appeals officer testified, "such an entry is not mandatory and that she rarely sees one.").[17]

The Ninth Circuit has held that Postal Service Form 3877 (the Certified Mailing List) is probative evidence and, in the absence of contrary evidence, sufficient to establish that a notice was mailed. *See United States v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984) (citing *United States v. Ahrens*, 530 F.2d 781, 784-86 (8th Cir. 1976); *Cataldo v. Comm'r*, 60 T.C. 522, 524 (1973)); *see also Welch v. United States*, 678 F.3d 1371, 1377 (Fed. Cir. 2012). As noted above, Plaintiffs' contrary evidence focuses almost exclusively on the assertion that they did not receive a notice of deficiency. But in the face of the Form 3877, the TXMOD, and Shanahan's testimony, no reasonable factfinder could find that Plaintiffs have carried their burden of proving that a notice of deficiency for the 2007 tax liability was not mailed. The Court accordingly will grant summary judgment on the remaining portion of Count 2 – challenging the application of $6,804.13 to the 2007 tax liability. *See Celotex*, 477 U.S. at 322 (summary judgment warranted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Anderson*, 477 U.S. at 248 (evidence must be "such that a reasonable jury could return a verdict for the nonmoving party").

### D.      Count 7 – Damages Under 26 U.S.C. § 7433.

Plaintiffs assert that they are entitled to damages under § 7433 because the IRS did not send them the notice of deficiency for 2007. Doc. 1 ¶¶ 106-10. Damages under § 7433

---

[17] Nor can the Court accept Plaintiffs' argument that Lloyd admitted the IRS did not mail a notice. *See* Doc. 41 at 5. Lloyd's admission was made in the prior Tax Court case, which concerned the 6702 penalties assessed against Plaintiffs for tax years 2003-2007. In that setting, Lloyd admitted that "Respondent has not issued a Notice of Deficiency to Petitioners for any tax year at issue in this case (2003 through 2007)." Doc. 42 at 11. Lloyd's declaration explains that this admission was limited to the issues in the case – the 6702 penalties – and that he "was not admitting that the IRS had not issued a Notice of Deficiency regarding [Plaintiffs'] income tax liabilities" generally. Doc. 19-25 ¶ 7. This is a reasonable interpretation of the admission as it was expressly focused on "any tax year *at issue in this case*." Doc. 42 at 11 (emphasis added).

are available where the IRS "recklessly or intentionally, or by reason of negligence," disregards a provision in the Internal Revenue Code or regulation.  § 7433(a).

The parties appear to disagree as to whether Plaintiffs are challenging the *assessments* made by the IRS or its *collection* of overpayments.  *See* Docs. 40 at 13, 47 at 9-10.  Regardless, Plaintiffs' claim for damages under § 7433 fails because Plaintiffs cannot show that a notice of deficiency was not mailed, as discussed above.  The Court will grant Defendant's motion to dismiss Count 7.

**E.    Count 8 – Injunction.**

Count 8 asks the Court to enjoin the IRS from collecting or assessing additional civil penalties or otherwise contacting Plaintiffs.  Doc. 1 ¶¶ 111-25.  Injunctions on the collection of taxes are narrowly limited by the Anti-Injunction Act, 26 U.S.C. § 7421.  Courts have no subject matter jurisdiction over actions to enjoin the assessment or collection of a tax except as specifically provided in §§ 6212, 6213, and 7421.  One of those exceptions provide that a court may enjoin assessment or collection where the IRS has not satisfied its obligation to give the taxpayer a timely notice of deficiency.  *See* 26 U.S.C. § 6212(a).  As discussed above, however, Plaintiffs have not established that the IRS failed to mail a notice of deficiency.  The Court will dismiss Count 8.[18]

**F.    Count 9 – Mandamus.**

Count 9 relates to the IRS's abatement and subsequent reinstatement of Plaintiffs' 6702 penalties.  Plaintiffs ask the Court to order the IRS to enforce its penalty reduction program and abate their penalties.  Doc. 1 ¶ 135.

"Mandamus writs, as extraordinary remedies, are appropriate only when a federal officer, employee, or agency owes a nondiscretionary duty to the plaintiff that is 'so plainly prescribed as to be free from doubt.'"  *Stang v. IRS*, 788 F.2d 564, 565 (9th Cir. 1986)

---

[18] Plaintiffs also allege "extraordinary and exceptional circumstances of a pattern of ongoing unlawful and discriminatory government behavior" and the violation of their Constitutional rights.  Doc. 40 at 17.  Plaintiffs' evidence does not come close to substantiating these claims.

(quoting *Pescosolido v. Block*, 765 F.2d 827, 829 (9th Cir. 1985)).  Because the IRS had no authority to abate the 6702 penalties while Plaintiffs were challenging the penalties before the Ninth Circuit and the matter was in the hands of DOJ, the Court cannot grant this extraordinary remedy.

**III.   Plaintiffs' Motion for Leave to File Surreplies.**

Plaintiffs contend that Defendant presents "new allegations of fact, new issues of law, and miscitation to certain authorities" in its replies.  Doc. 49 ¶ 14.  Plaintiffs have lodged proposed surreplies which the Court has reviewed.  Docs. 50, 51.  The surreplies elaborate on arguments already made in Plaintiffs' responses and merely seek to clarify Defendant's interpretation of cases and arguments made in reply.  These are not valid grounds for a surreply.  *See Sims v. Paramount Gold & Silver Corp.*, No. CV 10-356-PHX-MHM, 2010 WL 5364783, at *8 (D. Ariz. Dec. 21, 2010) (quoting *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 690 n.4 (S.D. Tex. 2006)) (surreplies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter").  The Court will deny Plaintiffs' motion.

**IT IS ORDERED:**

1.   Defendant's motion to dismiss (Doc. 19) is **granted in part** as set forth above.  Defendant's motion for summary judgment (Doc. 19) is **granted**.

2.   Plaintiffs' motion for leave to file a surreply is **denied** (Doc. 49).

3.   The Clerk is directed to enter judgment and terminate this action.

Dated this 3rd day of June, 2020.

David G. Campbell
Senior United States District Judge